IN RE: INQUIRY CONCERNING A JUDGE, NO. 138, MARILYN R. BISSELL, RESPONDENT

No. 29A92

(Filed 4 June 1993)

**1. Judges, Justices, and Magistrates § 43 (NCI4th) — recommendation of censure of judge — minority opinion — filing with Supreme Court**

A written minority opinion filed with the Judicial Standards Commission by one or more of its members recommending that respondent judge not be censured is not confidential and should be filed in the Supreme Court with the Commission's

recommendation. N.C.G.S. § 7A-377; Rule 4, Rules of the Judicial Standards Commission.

**Am Jur 2d, Judges §§ 18 et seq.**

2. **Judges, Justices, and Magistrates § 36 (NCI4th) — district court judge — barring attorney from her courtroom — conduct prejudicial to administration of justice — censure**

A district court judge is censured by the Supreme Court for conduct prejudicial to the administration of justice that brings the judicial office into disrepute for barring an attorney from sessions of juvenile court over which she would be presiding because he had initiated a preliminary investigation by the Judicial Standards Commission of allegations that the judge had engaged in improper *ex parte* communications with potential witnesses in pending juvenile cases. Although respondent judge's actions were intended to preclude her from hearing the attorney's cases while she harbored angry feelings toward him, the proper course of action was the judge's own recusal.

**Am Jur 2d, Judges §§ 18 et seq.**

Justice PARKER did not participate in the consideration or decision of this case.

This matter is before the Court upon a recommendation by the Judicial Standards Commission, filed 8 January 1992, that Judge Marilyn R. Bissell, a Judge of the General Court of Justice, District Court Division, Twenty-sixth Judicial District, be censured for conduct prejudicial to the administration of justice that brings the judicial office into disrepute. Heard in the Supreme Court 14 May 1992.

*Weinstein & Sturges, P.A., by T. LaFontine Odom and L. Holmes Eleazer, Jr., for Judge Marilyn R. Bissell, respondent-appellant.*

*James J. Coman, Senior Deputy Attorney General, Special Counsel to the Judicial Standards Commission.*

PER CURIAM.

The record filed with us in support of the recommendation of the Judicial Standards Commission (Commission) that Judge Marilyn Bissell (Respondent) be censured reveals the following:

**IN RE BISSELL**

[333 N.C. 766 (1993)]

In February 1990 Mr. Robert McCarter, then an attorney with the Youth and Family Services Division of the Mecklenburg County Department of Social Services, became concerned that Respondent had engaged in improper *ex parte* communications with two witnesses scheduled to testify in a re-commitment hearing regarding a juvenile. The witnesses were a psychologist who had evaluated the juvenile pursuant to Respondent's order and the juvenile court counselor assigned to the case. Mr. McCarter's concern arose from conversations he had with the two witnesses. It caused him to send a memorandum to personnel in the Youth and Family Services Division prohibiting them from engaging in certain kinds of *ex parte* communications with judges assigned to juvenile court. He sent copies of the memorandum to district court judges assigned to juvenile court, including Respondent. Respondent forcefully expressed her disagreement with part of the memorandum to Mr. McCarter.[1] Mr. McCarter filed a complaint against Respondent with the Commission.

On 23 May 1990 the Commission notified Respondent that it had ordered a preliminary investigation to determine whether formal proceedings under Commission Rule 8 should be instituted against her. The notice related that the subject matter of the investigation included allegations that the Respondent had initiated *ex parte* communications with potential witnesses in pending juvenile cases.

On 12 July 1990, knowing that Mr. McCarter had instigated the Commission's investigation, Respondent called him into her office and told him he was *persona non grata* in her court and that he should not practice before her.

On 16 November 1990 Special Counsel for the Commission filed complaint alleging that on two occasions Respondent had engaged in conduct prejudicial to the administration of justice and violative of the North Carolina Code of Judicial Conduct: First, Respondent in February 1990 had discussed *ex parte* a juvenile case with two individuals who were to be witnesses at a hearing involving the juvenile. Second, Respondent on 12 July 1990 "in retaliation" against Mr. McCarter's "involvement in this inquiry"

---

1. Part of the memorandum placed certain restrictions on *ex parte* communications concerning juvenile justice "systemic issues," and it was these restrictions with which Respondent most vigorously expressed her disagreement.

IN RE BISSELL

[333 N.C. 766 (1993)]

informed Mr. McCarter that he was *persona non grata* in her court-room and should no longer appear in cases before her.

In her answer Respondent averred that in January or February 1990 she had discussed the general problem of finding appropriate treatment facilities and programs for all juvenile sex offenders with the two individuals named in the complaint; that she received notice of the Commission's preliminary investigation on 24 May 1990; and that on 12 July 1990 she invited Mr. McCarter into her office and informed him privately that "she considered him *persona non grata* in her courtroom and requested that he not practice in a court in which she was the presiding judge."

After Respondent was served with a Notice of Formal Hearing on 16 September 1991, a plenary hearing was held before the Commission on 21 November 1991. At the hearing Mr. McCarter, the two persons with whom the *ex parte* communications had allegedly been made and Respondent, among others, testified. The evidence tended not to support the allegations of improper *ex parte* communications; indeed, it tended to show that these allegations were unfounded.

There was little conflict in the evidence of the 12 July 1990 incident regarding Mr. McCarter. Respondent, herself, testified that she was "upset" when she received formal notice of the Commission's investigation on 24 May 1990; that she knew Mr. McCarter had caused the investigation to occur; and that after thinking about it for about two weeks, she determined that "it would be inappropriate for him to practice in my court under these circumstances [because] [h]e had filed a complaint against me and I knew he had filed a complaint against me, and that's not fair to his clients." Respondent described her encounter on this date with Mr. McCarter as follows:

> I saw Bob on the stairs—Mr. McCarter on the stairs in the old courthouse, the one with the pillars. He was either going up or coming down; I don't remember which. I asked him to come to my office, which at that time was in that old building on the second floor, I wanted to talk to him. He came over there. We closed the door. I sat behind my desk. I believe he sat in a chair, and I very quietly told him that it was inappropriate for him to come into my court. I called him persona non grata. Maybe that's a bad term, but that's what I used. And that's what I said. . . . He acted like he was

real surprised and he said, "Oh, I don't know why you're doing this." And I said, "Oh, yes, Bob[,] I think you know why I'm doing this."

Respondent said she followed this conversation with a handwritten note to Mr. McCarter which read: "Dear Mr. McCarter: As of this date [12 July 1990], you are declared *Persona Non Grata* in my Courtroom. Please do *not* practice in any Court in which I am presiding. Very truly yours, Marilyn R. Bissell."

Other evidence established without contradiction that Mr. McCarter had left his position with the Youth and Family Services Division on 1 July 1990 to enter the private practice of law.

After hearing the evidence the Commission found the facts essentially as they have been related and in accordance with the testimony recounted above. The Commission found:

The respondent issued her interdiction against Mr. McCarter in *retaliation* for his filing a complaint against her with the Commission. The respondent did so notwithstanding the fact and her admission that she attributed no malice to Mr. McCarter for reporting her conduct to the Commission, and she recognized that an attorney has an ethical responsibility to report matters the attorney believes are a violation of the Code of Judicial Conduct. Furthermore, the respondent's action occurred after a seven-week period during which the respondent pursued no other alternatives for resolving her perceived conflict with Mr. McCarter.

Based on these findings the Commission concluded "on the basis of clear and convincing evidence" that Respondent's actions on 12 July 1990 constituted:

a. conduct in violation of Canons 2A and 3A(3) of the North Carolina Code of Judicial Conduct;[2] and

---

2. Canon 2A of the North Carolina Code of Judicial Conduct provides: "A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." Canon 3A(3) provides, in pertinent part: "A judge should be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom he deals in his official capacity . . . ."

## IN RE BISSELL

[333 N.C. 766 (1993)]

b. willful misconduct in office and conduct prejudicial to the administration of justice that brings the judicial office into disrepute.[3]

Upon these findings of fact and conclusions of law, the Commission recommended that this Court censure Respondent. The Commission's formal "Recommendation" recited that six members of the Commission heard the case; the Commission determined that there was not clear and convincing evidence to support the allegations regarding the *ex parte* communications; and the Commission dismissed these allegations. The Recommendation recites that "at least five" members concur in the findings, conclusions and recommendation regarding the 12 July 1990 incident.

After this matter was argued on 14 May 1992, Respondent on 21 May 1992 petitioned the Court for its writ of certiorari to add to the record on appeal a written minority opinion filed by one member of the Commission. The Commission responded to the petition and prayed that the petition for the writ be denied. The Commission contended that any minority position with regard to the Commission's recommendation was confidential under the statutes and rules governing the Commission's deliberations. After considering the petition, the response and the statutes and rules governing the Commission's deliberations, we issued the writ to bring forward and make a part of the record before us the minority opinion referred to in the petition.

General Statute § 7A-377(a) (Supp. 1992) and Rule 4 of the Rules of the Judicial Standards Commission, Annotated Rules of North Carolina 211 (Michie 1993), govern the confidentiality of matters before the Commission and how the Commission's recommendations are made to this Court. In pertinent part the statute provides:

Unless otherwise waived by the justice or judge involved all papers filed with and proceedings before the Commission, including any preliminary investigation which the Commission may make, are confidential, except as provided herein. After the preliminary investigation is completed, and if the Commission concluded that formal proceedings should be instituted, the notice and complaint filed by the Commission, along with

---

3. As grounds for censure or removal N.C.G.S. § 7A-376 provides, among other things, "conduct prejudicial to the administration of justice that brings the judicial office into disrepute."

the answer and all other pleadings, are not confidential. Formal hearings ordered by the Commission are not confidential, and recommendations of the Commission to the Supreme Court, along with the record filed in support of such recommendations are not confidential . . . . At least five members of the Commission must concur in any recommendation to censure or remove any justice or judge. A respondent who is recommended for censure or removal is entitled to a copy of the proposed record to be filed with the Supreme Court, and if he has objections to it, to have the record settled by the Commission. . . . The Supreme Court may approve the recommendation, remand for further proceedings, or reject the recommendation.

Rule 4 provides in pertinent part:

(a) All papers filed with and proceedings before the Commission are confidential, unless the respondent judge otherwise requests. The recommendations of the Commission to the Supreme Court, and the record filed in support of the recommendations are not confidential.

The Commission argued in its response to the petition that when five of its members concur in a recommendation to this Court only those parts of the record before it which support the recommendation must be filed here; minority votes are not required to be revealed and, to protect the confidentiality of the Commission's deliberations, should not be revealed.

[1] We are not, however, dealing here with a simple minority vote. The question presented by the petition and response is whether a written minority opinion duly filed with the Commission by its author and recommending that the respondent judge not be censured should be made a part of the record before this Court.

The answer provided by both General Statute § 7A-377 and Rule 4(a) is yes. Both say that the "recommendations" of the Commission to the Court and the record in support of the "recommendations" are not confidential. We think the word "recommendations" includes both the recommendation of the Commission, that is, the recommendation in which at least five members of the Commission concur, and any contrary minority recommendation which one or more members of the Commission may have duly filed. That both the statute and the rule use the plural form of the noun shows that the legislature and the drafters of the rule contemplated the

IN RE BISSELL

[333 N.C. 766 (1993)]

possibility of majority and minority recommendations, particularly when a subsequent sentence in the statute reverts to the singular form when it provides that at least five members of the Commission must concur in a "recommendation" of censure or removal.

This interpretation of the statute and the rule comports with how deliberative, quasi-judicial bodies, such as the Commission, normally operate. Since this Court must ultimately decide whether to discipline the judge, it ought to have the benefit of any written minority opinion which recommends to it action contrary to or different from the recommendation of the Commission to assist it in its deliberations. For these additional reasons we believe our reading of the statute to be the proper one.

We hold, therefore, that a written minority recommendation filed with the Commission by one or more of its members is not confidential and should be filed with this Court together with the Commission's recommendation.

[2] As to the merits of the Commission's recommendation that Respondent be censured, we approve the recommendation.

The evidence makes clear that Respondent barred Mr. McCarter from sessions of juvenile court over which she would be presiding because he had initiated the Commission's preliminary investigation of her. Respondent's actions were apparently intended to preclude her from hearing Mr. McCarter's cases while she harbored angry feelings towards him. In such situations, when interest or prejudice may compromise the objectivity of a judge, the proper course of action is the judge's own recusal. Code of Judicial Conduct, Canon 3C(1)(a).[4]

Here, rather than recuse herself in cases in which Mr. McCarter was serving as counsel, which would have been the proper course, Respondent inappropriately put the onus on Mr. McCarter and his clients to avoid her court. In effect, instead of taking full responsibility upon herself for dealing with her bias in Mr. McCarter's cases, understandable enough under the circumstances, Respondent improperly shifted that responsibility to Mr. McCarter.

---

4. This Canon provides: "(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where: (a) He has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceedings."

The gravamen of Respondent's impropriety was not her motive, characterized by the Commission as retaliatory, but "the conduct itself, the results thereof, and the impact such conduct might reasonably have upon knowledgeable observers." *In re Edens*, 290 N.C. 299, 306, 226 S.E.2d 5, 9 (1976); *accord In re Crutchfield*, 289 N.C. 597, 603, 223 S.E.2d 822, 826 (1975). One likely impact of such conduct is to discourage attorneys and other court personnel from reporting judicial misconduct because they fear judicial reprisal.

For these reasons, we conclude the evidence supports the Commission's conclusions that Respondent's actions constitute conduct in violation of Canons 2A and 3A(3) of the Code of Judicial Conduct and "conduct prejudicial to the administration of justice that brings the judicial office into disrepute." N.C.G.S. § 7A-376.

Now, therefore, it is ordered by the Supreme Court of North Carolina, in Conference, that the Respondent, Judge Marilyn R. Bissell, be, and she is hereby, censured according to the recommendation of the Judicial Standards Commission.

Justice Parker did not participate in the consideration or decision of this case.