IN THE MATTER OF: JUDGE JOSEPH P. EDENS

No. 82

(Filed 17 June 1976)

**1. Judges § 7— misconduct in office — proceeding before Judicial Standards Commission**

　　A proceeding before the Judicial Standards Commission is neither criminal nor civil in nature but is an inquiry into the conduct of a judicial officer, the purpose of which is not primarily to punish any individual but to maintain due and proper administration of justice in our State's courts, public confidence in its judicial system, and the honor and integrity of its judges.

In re Edens

**2. Judges § 7— wilful misconduct in office**

Wilful misconduct in office is improper and wrong conduct of a judge acting in his official capacity done intentionally, knowingly and, generally, in bad faith; it is more than a mere error of judgment or an act of negligence, and while the term would encompass conduct involving moral turpitude, dishonesty, or corruption, these elements need not necessarily be present.

**3. Judges § 7— conduct prejudicial to administration of justice that brings judicial office into disrepute**

Conduct prejudicial to the administration of justice that brings the judicial office into disrepute has been defined as conduct which a judge undertakes in good faith but which nevertheless would appear to an objective observer to be not only unjudicial conduct but conduct prejudicial to public esteem for the judicial office.

**4. Judges § 7— misconduct in office — motives — results of conduct**

Whether the conduct of a judge may be characterized as prejudicial to the administration of justice that brings the judicial office into disrepute depends not so much upon the judge's motives but more on the conduct itself, the results thereof and the impact such conduct might reasonably have upon knowledgeable observers.

**5. Judges § 7— conduct prejudicial to administration of justice that brings judicial office into disrepute — constitutionality of phrase**

The phrase "conduct prejudicial to the administration of justice that brings the judicial office into disrepute" is not unconstitutionally vague or overbroad.

**6. Judges § 7— misconduct in office — matters considered**

In determining whether conduct of a judge constitutes conduct prejudicial to the administration of justice that brings the judicial office into disrepute, consideration should be given to the traditions, heritage, and generally recognized practices of the courts and the legal profession, the common and statutory law, codes of judicial conduct, and traditional notions of judicial ethics.

**7. Judges § 7— misconduct in office — ex parte disposition of criminal case outside courtroom — censure by Supreme Court**

A district court judge, upon recommendation of the Judicial Standards Commission, is censured by the Supreme Court for wilful misconduct in office and conduct prejudicial to the administration of justice that brings the judicial office into disrepute because of his disposition of a criminal case outside the courtroom when the court was not in session and without notice to the district attorney who was prosecuting the docket when the matter was not on the printed calendar for disposition, since the judge's action (1) improperly precluded the district attorney from participating in the disposition, (2) improperly removed the proceeding from the public domain, and (3) violated Canon 3(A)(4) of the North Carolina Code of Judicial Conduct.

Justice LAKE did not participate in the decision of this matter.

In re Edens

APPEARANCES:

*Simpson, Baker & Aycock by Gene Baker, for Judge Joseph P. Edens, respondent.*

*Rufus L. Edmisten, Attorney General, by Millard R. Rich, Jr., Deputy Attorney General, and Special Counsel James E. Scarbrough, Associate Attorney for Judicial Standards Commission.*

## ORDER OF CENSURE

This matter is before the Court upon the Recommendation of the Judicial Standards Commission (Commission) filed with us on February 3, 1976, that Judge Joseph P. Edens, a judge of the General Court of Justice, District Court Division, Twenty-Fifth Judicial District (Respondent), be censured for "wilful misconduct in office" and "conduct prejudicial to the administration of justice that brings the judicial office into disrepute," as these phrases are used in Article IV, Section 17(2) of the North Carolina Constitution and General Statute 7A-376 (1974 Cum. Supp.). Having considered the record in the matter consisting of the verified complaint and answer filed with, the evidence heard by, the findings of fact, conclusions, and Recommendation made by the Commission, together with the briefs and arguments before us for Respondent and Commission, we note the following procedure before and findings of the Commission and we make the following conclusions of law and order of censure:

## PROCEDURE BEFORE AND FINDINGS OF THE COMMISSION

1. This proceeding was instituted before the Commission in July, 1975, by the filing of a verified complaint which alleged that Respondent had engaged in wilful misconduct in office and conduct prejudicial to the administration of justice that brings the judicial office into disrepute in that on February 20, 1975, in Criminal Case No. 74-CR-18186 pending in Catawba County, wherein a defendant was charged with driving a motor vehicle under the influence of intoxicating liquor, Respondent accepted a plea of guilty and entered judgment under the following circumstances:

> "(a) the plea of guilty was not taken in open court in the presence of the defendant, the assistant district attorney and the prosecuting officer; (b) the plea of guilty was

taken without prior notice to the assistant district attorney; (c) the judgments signed by the Respondent were signed out of the presence of the defendant, assistant district attorney and prosecuting officer; (d) the judgments were signed by Respondent when court was not in session and in places where court is not held; and (e) the judgments were signed without prior notice to the assistant district attorney."

2. Respondent filed a verified answer which, in part, alleged as follows:

"a. This answering respondent denies any wilful misconduct in office or conduct prejudicial to the administration of justice that brings the judicial office into disrepute.

"b. This respondent denies that the plea of guilty was not taken in open court; this respondent was in the basement Courtroom, Newton, North Carolina, when the plea of guilty to the charge was tendered to the Court by Mr. Matthews.

"c. This respondent admits that neither the defendant nor the assistant district attorney nor the prosecuting officer were present when the plea of guilty was taken.

"d. This respondent admits accepting the guilty plea without prior notice to the assistant district attorney. The plea of guilty was to the exact charge.

"e. This answering respondent admits signing both judgments out of the presence of the defendant, assistant district attorney and prosecuting officer. This respondent dictated one judgment in the Clerk's office to Mrs. Lemons and signed same and left for the day. This respondent had no reason to suspect that the judgment written by Mrs. Lemons on the Uniform Traffic Citation that this respondent signed outside the courthouse was any different from the one that this respondent had dictated several minutes earlier in the Clerk's office.

"f. This respondent admits signing the first judgment in the Clerk's office in Newton, North Carolina and signing the Uniform Traffic Citation moments later just outside the Courthouse in Newton, North Carolina."

3. Upon due notice, Respondent was accorded a full adversary hearing before the Commission on October 9, 1975, at which time he was represented by counsel. The Commission considered pertinent portions of the pleadings, the sworn testimony of Mrs. Anne Lemons, Deputy Clerk, Catawba County, a statement made by Respondent on April 22, 1975, to one Dallas A. Cameron, Jr., an investigator for the Commission, which statement was tendered at the hearing by Respondent, together with certain exhibits which included the affidavit and warrant and a judgment signed by Respondent on a Uniform Traffic Citation in Criminal Case No. 74-CR-18186 in Catawba County.

4. Upon this evidence the Commission found certain facts as follows:

"6. That on February 20, 1975, Respondent presided over a criminal session of the District Court of Catawba County. That said session was held in the basement of the County Building in Newton, North Carolina.

"7. That on February 20, 1975, Deputy Clerk of Superior Court Mrs. . . . Lemons was present at said criminal session presided over by respondent. That Mrs. Lemons kept the records of the Court during said session. That at said Session, the State was represented by Assistant District Attorney Robert Grant.

"8. That criminal case #74CR18186, wherein the defendant was Henry Conner Coan, Jr., was not on the printed calendar for disposition on February 20, 1975 and no proper motion in said case was before the judge. That the Court papers for said case were not in the courtroom on said date but were in the Clerk's office on the main floor of said building.

"9. That on February 20, 1975, Assistant District Attorney Robert Grant announced in open court that he was through with the docket and Mrs. . . . Lemons thereupon left the courtroom and returned to the District Clerk's office on the main floor of said building.

"10. That Mrs. . . . Lemons had been in the Clerk's office only a few minutes after she had left the District Court when the respondent and Mr. Phillip Matthews, an attorney of Catawba County, approached her and requested her to pull the official file in case #74CR18186. That Mrs.

Lemons secured said file from the court records in said office and respondent instructed Mrs. . . . Lemons to enter a Judgment for Prayer for Judgment Continued for six months which Mrs. Lemons did.

"11. That the entry of Prayer for Judgment Continued for six months was made by Mrs. Lemons in the presence of respondent and Phillip Matthews but not in the presence of defendant Henry Conner Coan, Jr., nor in the presence of the Assistant District Attorney Robert Grant.

"12. That said Judgment was entered in the office of the Clerk and not in open court when court was in session and when no proper motion in said case was before the Judge.

"13. That said Judgment was entered without the prior knowledge or consent of the Assistant District Attorney who had prosecuted the docket on February 20, 1975, to wit, Robert Grant.

"14. That immediately upon the entry of the aforesaid Judgment in Case #74CR18186, respondent left the office of the Clerk. That in two or three minutes thereafter Mrs. . . . Lemons informed Attorney Phillip Matthews that she needed the respondent's signature on the bottom of the citation because such citation form had to be sent to the North Carolina Department of Motor Vehicles in Raleigh. That immediately Phillip Matthews left the office of the Clerk with said form and he returned with it to the Clerk's office within three minutes with the signature of the respondent thereon. That said Judgment reads 'Prayer for Judgment continued for Six Months on payment of Cost.' That Phillip Matthews then paid the cost to Mrs. . . . Lemons. That respondent had signed said form outside the courthouse. That a certified copy of said form was entered into evidence in this cause."

CONCLUSIONS OF LAW AND ORDER OF CENSURE

1. The Commission's findings are supported by the evidence. We affirm these findings.

[1]  2. "This proceeding is neither criminal nor civil in nature. It is an inquiry into the conduct of a judicial officer, the purpose of which is not primarily to punish any individual but to

maintain due and proper administration of justice in our State's courts, public confidence in its judicial system, and the honor and integrity of its judges." *In re Crutchfield,* 289 N.C. 597, 602, 223 S.E. 2d 822, 825 (1975).

3. In his petition for a hearing before this Court filed pursuant to Rule 2 of the Rules For Supreme Court Review of Recommendations of The Judicial Standards Commission, 289 N.C., Vol. 9, No. 6, Supreme Court Advance Sheets (hereinafter Rules For Supreme Court Review), Respondent contends first, that there was no legislative authority to create the Commission since the constitutional amendments authorizing its creation had not become effective when the enabling legislation was enacted and second, that the proceedings before the Commission are violative of the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States. Respondent, however, makes no argument on these points in his brief and cites no authority in support of them. He has, consequently, abandoned these contentions making it unnecessary for this Court to address itself to them. *See* Rule 2(d) of the Rules For Supreme Court Review and Rule 28, Rules of Appellate Procedure, 287 N.C. 671, 741 (1975).

[2] 4. Wilful misconduct in office is improper and wrong conduct of a judge acting in his official capacity done intentionally, knowingly and, generally, in bad faith. It is more than a mere error of judgment or an act of negligence. While the term would encompass conduct involving moral turpitude, dishonesty, or corruption, these elements need not necessarily be present. *See generally, Spruance v. Commission on Judicial Qualifications,* 13 Cal. 3d 778, 532 P. 2d 1209, 119 Cal. Rptr. 841 (1975); *Geiler v. Commission on Judicial Qualifications,* 10 Cal. 3d 270, 515 P. 2d 1, 110 Cal. Rptr. 201 (1973), cert. denied, 417 U.S. 932; *In re Haggerty,* 257 La. 1, 241 So. 2d 469 (1970). This phrase is not unconstitutionally vague or overbroad. *Keiser v. Bell,* 332 F. Supp. 608 (E.D. Pa. 1971).

[3-5] 5. Conduct prejudicial to the administration of justice that brings the judicial office into disrepute has been defined as "conduct which a judge undertakes in good faith but which nevertheless would appear to an objective observer to be not only unjudicial conduct but conduct prejudicial to public esteem for the judicial office." *Geiler v. Commission on Judicial Qualifications, supra* at 284, 515 P. 2d at 9, 110 Cal. Rptr. at 209 (1973). Whether the conduct of a judge may be so characterized

In re Edens

"depends not so much upon the judge's motives but more on the conduct itself, the results thereof, and the impact such conduct might reasonably have upon knowledgeable observers." *In re Crutchfield, supra* at 603, 223 S.E. 2d at 826. This phrase is not unconstitutionally vague or overbroad. *See Parker v. Levy,* 417 U.S. 733 (1974).

[6] 6. In applying the criteria above described, consideration should be given to the traditions, heritage, and generally recognized practices of the courts and the legal profession, the common and statutory law, codes of judicial conduct, and traditional notions of judicial ethics. While not necessarily determinative these may be usefully consulted to give meaning to the constitutional and statutory prohibitions. *See In re Crutchfield, supra,* and cases cited therein.

7. It is not clear from the Commission's findings whether Respondent authorized the entry of a "Prayer for Judgment continued for Six Months on payment of Cost." It is clear that he at least authorized the entry of a "Prayer for Judgment Continued for six months." His acceptance of a guilty plea and his authorization of this latter entry constituted a disposition, even if not a final one, of the case. It is more than a mere continuance of the matter; although a continuance would itself be a disposition, albeit not final, of the case.

[7] 8. A criminal prosecution is an adversary proceeding in which the district attorney, as an advocate of the state's interest, is entitled to be present and be heard. Respondent's disposition of Criminal Case No. 74-CR-18186, without notice to the district attorney who was prosecuting the docket when the matter was not on the printed calendar for disposition, improperly excluded the district attorney from participating in the disposition.

9. The trial and disposition of criminal cases is the public's business and ought to be conducted in public in open court. *See* N. C. Const., Art. I, § 18. "The public, and especially the parties, are entitled to see and hear what goes on in the courts." *Raper v. Berrier,* 246 N.C. 193, 195, 97 S.E. 2d 782, 784 (1957). Respondent's disposition of Criminal Case No. 74-CR-18186 outside the courtroom when court was not in session improperly removed the proceeding from the public domain where it belonged and made it instead a private matter between him and counsel for the defendant.

In re Edens

10. Canon 3(A)(4) of the North Carolina Code of Judicial Conduct, 283 N.C. 771, 772, provides that "[a] judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider *ex parte* or other communications concerning a pending or impending proceeding." Respondent's disposition of Criminal Case No. 74-CR-18186 violated this Canon.

11. We conclude that Respondent's disposition of Criminal Case No. 74-CR-18186 constituted wilful misconduct in office and conduct prejudicial to the administration of justice that brings the judicial office into disrepute in that it (1) improperly precluded the district attorney from participating in the disposition; (2) improperly removed the proceeding from the public domain; and (3) violated Canon 3(A)(4) of the North Carolina Code of Judicial Conduct. For this conduct Respondent ought to be censured in accordance with the Recommendation of the Judicial Standards Commission.

Now, therefore, it is ORDERED that Judge Joseph P. Edens be and he is hereby censured by this Court.

Done by the Court in Conference this 17th day of June, 1976.

> EXUM, Justice
> For the Court.

Justice LAKE did not participate in the decision of this matter.