IN THE SUPREME COURT OF NORTH CAROLINA

No. 30A18

Filed 11 May 2018

IN RE: INQUIRY CONCERNING A JUDGE, NO. 16-231
GARY L. HENDERSON, Respondent

This matter is before the Court pursuant to N.C.G.S. §§ 7A-376 and -377 upon a recommendation by the Judicial Standards Commission entered 20 December 2017 that Respondent Gary L. Henderson, a Judge of the General Court of Justice, District Court Division 26, State of North Carolina, receive a public reprimand for conduct in violation of Canons 1, 2A, 3A(3) and (5), and 3B(1) of the North Carolina Code of Judicial Conduct and for conduct prejudicial to the administration of justice that brings the judicial office into disrepute in violation of N.C.G.S. § 7A-376. This matter was calendared for argument in the Supreme Court on 18 April 2018, but determined on the record without briefs or oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure and Rule 3 of the Rules for Supreme Court Review of Recommendations of the Judicial Standards Commission.

*No counsel for Judicial Standards Commission or Respondent.*

ORDER

The issue before this Court is whether District Court Judge Gary L. Henderson (Respondent) should be publicly reprimanded for violations of Canons 1, 2A, 3A, and 3B of the North Carolina Code of Judicial Conduct amounting to conduct prejudicial

to the administration of justice that brings the judicial office into disrepute in violation of N.C.G.S. § 7A-376(b). Respondent has not challenged the findings of fact made by the Judicial Standards Commission (the Commission) or opposed the Commission's recommendation that he be publicly reprimanded by this Court.

On 2 June 2017, the Commission Counsel filed a Statement of Charges against Respondent alleging that he had engaged in conduct inappropriate to his office when he: "(1) failed to issue a ruling for more than two (2) years on a motion for attorney's fees and expenses . . . ; (2) failed to respond or delayed responding to party and attorney inquiries as to the status of the pending ruling; and (3) failed to respond in a timely manner to numerous communications from the Commission's investigator regarding the status of the ruling during the Commission's investigation into this matter."

On 20 December 2017, the Commission filed a Recommendation of Judicial Discipline, in which it made the following findings of fact:

> 1. On or about August 6, 2013, Respondent began presiding over a trial . . . to determine whether defendant Shaffer was entitled to attorney's fees and costs associated with her claims for post-separation support, permanent child custody, sanctions for purposeful delay, motion for contempt, and expert witness fees and costs. Plaintiff Zurosky was represented by attorney Tamela Wallace and defendant Shaffer was represented by attorney Amy Fiorenza. Unable to complete the hearing in a single session, the parties reconvened on April 23, 2014 and again on November 5, 2014 to conclude the trial. Respondent reserved ruling and directed the attorneys to submit written closing arguments. Attorney Fiorenza

submitted the defendant's attorney's fees closing arguments, attachments and exhibits to Respondent on December 12, 2014. Attorney Wallace submitted the plaintiff's attorney's fees closing arguments to Respondent on December 19, 2014.

2. On June 15, 2015, six months after Respondent reserved judgment on the motion for attorney's fees, Attorney Fiorenza emailed Respondent inquiring as to the status of the ruling on attorney's fees, costs, and expenses. The following day, Respondent emailed the parties with apologies, noting the "matter is on my radar and it is my hope to work on it next week since court will be down for the Judge's Conference."

3. On August 28, 2015, another six weeks later, Attorney Fiorenza again contacted Respondent by email. Attorney Fiorenza asked Respondent what his estimated timeframe might be to issue a ruling and noted her client was anxious to receive a decision sometime in 2015. Respondent told Attorney Fiorenza that he did not anticipate having the order completed in 2015 because he would not have time.

4. On February 8, 2016, Attorney Fiorenza emailed Respondent a third time to inquire as to when a ruling could be expected. Respondent did not respond to this inquiry.

5. On April 7, 2016, attorney Fiorenza emailed Respondent a final time regarding the status of the decision on attorney's fees as all other matters in the case had been concluded. Attorney Fiorenza further advised Respondent that she would be forced to withdraw from the case if a decision was not soon rendered as it had been sixteen (16) months since the hearing concluded. Respondent did not respond to this inquiry.

6. Attorney Fiorenza withdrew from the case on June 6, 2016.

7.	On June 20, 2016, Ms. Shaffer, now a *pro se* defendant, emailed Respondent, and copied the opposing attorney, to inquire when the parties could expect a decision on the attorney's fees motion heard in December 2014. Respondent did not respond. . . .

8.	Having heard no response from Respondent, Ms. Shaffer emailed Chief District Court Judge Regan Miller on the morning of July 15, 2016, and copied Respondent, seeking the Chief Judge's assistance in getting a response from Respondent. Ms. Shaffer expressed her frustration with the then eighteen (18) month delay in issuing a decision in her matter. Later that morning, Chief Judge Miller forwarded Ms. Shaffer's email to Respondent. That afternoon, Respondent replied to Chief Judge Miller that he had been "dragging [his] feet" and that he had no excuses for the delay other than his "dread" of the case. Respondent at that time also committed to "making a decision soon." Respondent, however, did not respond to Ms. Shaffer or otherwise inform the parties as to his intentions or the status of the ruling.

9.	On August 26, 2016, over a month after committing to Chief Judge Miller that he would soon issue his decision, Respondent finally emailed the parties to apologize for the tardiness of his decision and informed them that he intended to issue a decision by the end of the week of September 5, 2016. Although Attorney Fiorenza had withdrawn from the case, Respondent included her in the email and notified her that she would be tasked with drafting a proposed order consistent with his anticipated ruling in early September.

10.	Respondent failed to issue the ruling the week of September 5, 2016 as he had indicated to the parties and despite his commitment to Chief Judge Miller . . . that he would be "making a decision soon.". . .

11.	Ms. Shaffer emailed Respondent again on October 10, 2016, imploring Respondent to issue a decision.

Respondent again did not respond.

12.     On November 9, 2016, Ms. Shaffer filed a complaint with the Commission regarding the delay in issuing the attorney's fees decision. . . .

. . . .

14.     On January 22, 2017, Respondent emailed the attorneys with his decision, tasking attorney Fiorenza with drafting an order for Respondent in accordance with his instructions.

15.     On March 15, 2017, . . . Respondent informed the Commission that the attorneys' fees order had still not been issued yet as he was waiting on the draft order from the attorneys.  Pursuant to Mecklenberg County Local Rules, the Order had to be drafted by attorney Fiorenza and then provided to attorney Wallace for review and reconciliation.

16.     On March 27, 2017, Respondent informed the Commission that the Order had been entered, over 2 years and 3 months after the final hearing on the motion for attorneys' fees.

(Citations omitted.)  Based upon these findings of fact, the Commission concluded as

a matter of law that:

1.     Canon 1 of the Code of Judicial Conduct sets forth the broad principle that "[a] judge should uphold the integrity and independence of the judiciary." To do so, Canon 1 requires that a "judge should participate in establishing, maintaining, and enforcing, and should personally observe, appropriate standards of conduct to ensure that the integrity and independence of the judiciary shall be preserved."

2.     Canon 2 of the Code of Judicial Conduct

generally mandates that "[a] judge should avoid impropriety in all the judge's activities." Canon 2A specifies that "[a] judge should respect and comply with the law and should conduct himself/herself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."

3. Canon 3 of the Code of Judicial Conduct governs a judge's discharge of his or her official duties. In so doing, Canon 3A(3) requires a judge to be "patient, dignified and courteous to litigants, witnesses, lawyers and others with whom the judge deals in the judge's official capacity." Canon 3A(5) requires a judge to "dispose promptly of the business of the court." Furthermore, Canon 3B(1) requires a judge to "diligently discharge the judge's administrative responsibilities" and "maintain professional competence in judicial administration."

4. The Commission's findings of fact, as supported by the Stipulation, show that Respondent failed to issue a ruling for more than two years and three months after the last day of the hearing on the matter, and that such delay was without justification and occurred notwithstanding multiple requests to issue a ruling from the parties, the attorneys and Respondent's Chief Judge. Further, Respondent concedes that there was no excuse for the delay other than his "dread" of the case.

5. Upon the agreement of the Respondent and the Commission's independent review of the stipulated facts concerning Respondent's unreasonable and unjustified delay . . . , the Commission concludes that Respondent:

> a. failed to personally observe appropriate standards of conduct necessary to ensure that the integrity of the judiciary is preserved, in violation of Canon 1 of the North Carolina Code of Judicial Conduct;
>
> b. failed to conduct himself in a manner that

promotes public confidence in the integrity of the judiciary, in violation of Canon 2A of the North Carolina Code of Judicial conduct;

c. failed to be courteous to litigants and lawyers with whom he was dealing in his official capacity, in violation of Canon 3A(3) of the North Carolina Code of Judicial Conduct;

d. failed to dispose promptly of the business of the court, in violation of Canon 3A(5) of the North Carolina Code of Judicial Conduct;

e. and failed to diligently discharge his administrative responsibilities and maintain professional competence in judicial administration in violation of Canon 3B(1) of the North Carolina Code of Judicial Conduct.

6. Upon the agreement of Respondent and the Commission's independent review of the Stipulation and the record, the Commission further concludes that Respondent's violations of the Code of Judicial Conduct amount to conduct prejudicial to the administration of justice that brings the judicial office into disrepute, in violation of N.C. Gen. Stat. § 7A-376(b).

(Brackets in original.) (Citations omitted.) Based upon these findings of fact and conclusions of law, the Commission recommended that this Court publicly reprimand Respondent. The Commission based this recommendation on its earlier findings and conclusions and the following additional dispositional determinations:

1. Respondent freely and voluntarily entered into the Stipulation to bring closure to this matter and

because of his concern for protecting the integrity of the court system. Respondent understands the negative impact his actions have had on the integrity and impartiality of the judiciary.

2. Respondent has an excellent reputation in his community. The actions identified by the Commission as misconduct by Respondent appear to be isolated and do not form any sort of recurring pattern of misconduct.

3. Respondent has been cooperative with the Commission's investigation, voluntarily providing information about the incident and fully and openly admitting error and remorse.

4. Respondent's record of service to the judiciary, the profession and the community at large is otherwise exemplary. . . .

5. Upon reflecting upon the circumstances that brought him to this juncture, Respondent acknowledges that the conduct set out in the Stipulation establishes by clear and convincing evidence that his conduct is in violation of the North Carolina Code of Judicial Conduct and is prejudicial to the administration of justice that brings the judicial office into disrepute in violation of North Carolina General Statute § 7A-376(b). Respondent further acknowledges that the appropriate discipline in this matter is public reprimand by the North Carolina Supreme Court.

6. Pursuant to N.C. Gen. Stat. § 7A-377(a5), which requires that at least five members of the Commission concur in a recommendation of public discipline to the Supreme Court, all six Commission members present at the hearing of this matter concur in this recommendation to publicly reprimand Respondent.

(Citations and boldface type omitted.)

When reviewing a recommendation from the Commission in a judicial discipline proceeding, "the Supreme Court 'acts as a court of original jurisdiction, rather than in its typical capacity as an appellate court.' " *In re Mack*, 369 N.C. 236, 249, 794 S.E.2d 266, 273 (2016) (order) (quoting *In re Hartsfield*, 365 N.C. 418, 428, 722 S.E.2d 496, 503 (2012) (order)). In conducting an independent evaluation of the evidence, "[w]e have discretion to 'adopt the Commission's findings of fact if they are supported by clear and convincing evidence, or [we] may make [our] own findings.' " *Id.* at 249, 794 S.E.2d at 273 (quoting *In re Hartsfield*, 365 N.C. at 428, 722 S.E.2d at 503 (second and third sets of brackets in original)). "The scope of our review is to 'first determine if the Commission's findings of fact are adequately supported by clear and convincing evidence, and in turn, whether those findings support its conclusions of law.' " *Id.* at 249, 794 S.E.2d at 274 (quoting *In re Hartsfield*, 365 N.C. at 429, 722 S.E.2d at 503).

After careful review, this Court concludes that the Commission's findings of fact, including the dispositional determinations set out above, are supported by clear, cogent, and convincing evidence in the record. In addition, we conclude that the Commission's findings of fact support its conclusions of law. Accordingly, we accept the Commission's findings and conclusions and adopt them as our own. Based upon those findings and conclusions and the recommendation of the Commission, we conclude and adjudge that Respondent should be publicly reprimanded.

IN RE J.H.

*Order of the Court*

Therefore, pursuant to N.C.G.S. §§ 7A-376(b) and -377(a5), it is ordered that Respondent Gary L. Henderson be PUBLICLY REPRIMANDED for violations of Canons 1, 2A, 3A, and 3B of the North Carolina Code of Judicial Conduct amounting to conduct prejudicial to the administration of justice that brings the judicial office into disrepute in violation of N.C.G.S. § 7A-376(b).

By order of the Court in Conference, this the 11th day of May, 2018.

s/Morgan, J.
For the Court

WITNESS my hand and the seal of the Supreme Court of North Carolina, this the 11th day of May, 2018.

Amy Funderburk
Clerk of the Supreme Court

s/M.C. Hackney
Assistant Clerk